IzGONZALES, Judge.
Richard P. Ieyoub, Attorney General of the State of Louisiana (State), filed a petition for injunctive relief pursuant to La.R.S. 17:1808(H)[1] against the World Christian Church, Inc. (WCC), operating as LaSalle University. The petition states in pertinent part:
2
Petitioner shows that World Christian Church, Inc. d/b/a LaSalle University (hereinafter “LaSalle University”) is operating in the State of Louisiana as a post secondary, academic degree-granting institution and, therefore, is subject to LSA-R.S. 17:1808.
3
Petitioner shows that, pursuant to the mandates of LSA-R.S. 17:1808 C. (1), the Board of Regents has adopted regulations necessary for the licensure of all post secondary degree-granting institutions operating in this state. These regulations are set forth at LAC 28:IX, Chapters 1, 3 and 5.
4
Petitioner shows that Dr. Polly Zar, President of LaSalle University, was sent a certified letter from the Louisiana Board of Regents, mailed September 24, 1993, notifying defendants that LaSalle University had failed to fulfill the licensure requirements of the Louisiana Board of Regents and, therefore, was operating in noncompliance with LSA-R.S. 17:1808 C. (1). (Copy of letter attached as exhibit A).
5
Petitioner shows that the defendants have failed to complete and submit the required licensure application which was mailed to them and, thus, they have failed to comply with the licensure requirements of LSA-R.S. 17:1808.
The State asked that WCC be enjoined from further operating LaSalle University until the provisions of La.R.S. 17:1808 were met. WCC filed an “Exception And Answer To Petition For Injunctive Relief,” stating in its exception, “Petitioner has no cause of action against defendants upon which relief may be granted because WCC is exempt from the provisions of LSA-R.S. 17:1808 by operation of law.” In answer to the petition, WCC stated, in pertinent part, the following defenses:
Defendants are in compliance with all statutory requirements as applicable to them.
| ^Defendants are exempt from the provisions of LSA-R.S. 17:1808 as an institution granted a tax exemption under the provisions of Section 501(e)(3) of the Federal Internal Revenue Code pursuant to LSA-R.S. 17:1808 J(3).
Defendant WCC avers that plaintiffs denial of its exempt status pursuant to LSA-R.S. 17:1808 J(3) violates defendant’s constitutional rights under the free exercise and establishment clauses of the First Amendment to the Constitution of the United States; WCC further avers that denial of such status is constitutionally invalid as a violation of its rights to due process and equal protection under the Fourteenth Amendment to the Constitution of the United States.
Defendant WCC further avers that plaintiffs denial of defendant’s exempt status pursuant to LSA-R.S. 17:1808 J(3) violates its constitutional rights to free exercise of religion, to no establishment of religion, to due process of law and equal protection of the law under the Constitution of the State of Louisiana, Article I, Sections 2, 3 and 8.
*773 Alter a hearing, the State’s request for injunctive relief was denied. The trial court, in its oral reasons for judgment, stated in part as follows:
The problem arises in the reading of the IRS provision whether one has an affirmative duty in claiming that status to obtain proof under the IRS regulations whether or not they have achieved that status. The defendant is claiming they have the status under the exemption and by doing so also claiming the exemption of the provisions of the registration requirements as set forth in R.S. 17:1808 in which the State requires registration for these educational institutions. The real problem besides the separation of the church and state, which is involved, is that very difficult analysis of what the IRS code is. And it seems to be very circular, but in reading it, it seems that one can, if they have a certain status, claim their status under the Internal Revenue Code without an affirmative duty to seek recognition of said status. Therefore, I really believe in the event that this status is not correct, it’s up to the IRS to investigate and make that determinatiop. At such time, clearly if they are not exempt, then they would not be exempt from the requirements of R.S. 17:1808 and the State then would have the relief they requested. But in requesting this Court now to state they do not have that status, after what I have just recited, I don’t believe it’s proper. Therefore, the injunctive relief is denied.
The State appeals this judgment, raising two assignments of error.
1. The trial court erred in denying plaintiff-appellant’s petition for injunctive relief on the basis that the Board of Regents cannot require licensure applicants to substantiate |4their tax exempt status, for purposes of Act 129’s[2] exemption, where they are operating in this state as academic degree-granting institutions, under the Board’s jurisdiction, and the Board’s requirement is reasonable and necessary for the implementation of Act 129.
2. The trial court’s denial of injunctive relief is erroneous insofar as the court concluded that the IRC prevents the Board from requiring an institution claiming to be exempt from Act 129 to substantiate its tax exempt status under the federal tax code.
Act 129 of 1991 amended La.R.S. 17:1808 to require all postsecondary, academic degree-granting institutions operating in Louisiana to be registered and licensed by the Board of Regents. Prior to Act 129, La.R.S. 17:1808 merely required these institutions to be registered with the Board. The registration requirement was satisfied by supplying basic information to the Board, such as the name and address of the institution, the kind of degrees offered, and whether it was accredited by an agency holding membership in the Council on Postsecondary Accreditation. Apparently in response to concerns about the viability and worth of the instruction and degrees given by such institutions, the legislature enacted Act 129 of 1991. This Act provides for the Board of Regents to establish criteria and requirement for licensure of such institutions. However, it also provides an exemption to its licensure and registration requirements for institutions granted a tax exemption under § 501(e)(3) of the Internal Revenue Code (IRC).
Louisiana Revised Statute 17:1808 provides in pertinent part as follows:
A. The purpose of this Section is to insure the viability and worth of instruction offered in this state by any postseeondary, academic degree-granting institution by requiring that such instruction meet minimal academic and physical plant standards, and to protect both the student, who invests his time and money in such instruction, and the public, which often must rely on the postsecondary instruction and degrees as proof of the competence of an individual.
B. (1) All public and private postsecond-ary, academic degree-granting institutions offering instruction in this state, including correspondence schools domiciled in Louisiana, which are not under the jurisdiction *774 of the State Board of Elementary and Secondary Education, shall register with the Board of Regents. Registration shall be completed prior to the offering of instruction by the institution.
IfiD. On and after April 1, 1992, any post-secondary, academic degree-granting, institution operating or proposing to initiate operations in Louisiana shall not operate unless licensed by the Board of Regents.
F. If the Board of Regents determines that an institution has failed to satisfy any requirement for licensure, the Board shall, by written order, deny or revoke such license, and, in the case of an institution already operating in Louisiana, direct that it immediately cease enrolling additional students and that it cease its Louisiana operations at the end of the current quarter, semester, or comparable academic period, as applicable, but no later than one hundred fifty days from the date of the board’s written order. If the order is issued between quarters, semesters, or comparable academic periods, or within thirty days prior to the expiration of such period, the board may specify that the institution cease its Louisiana operations within thirty days and immediately cease enrolling additional students.
H. The attorney general may seek in-junctive relief against any institution not in compliance with any provision of this Section, and all costs incurred by the state in connection with such action shall be borne by such institution if found to be not in compliance with this Section.
J. (3) The provisions of this Section shall not be applicable to any institution granted a tax exemption under the provisions of Section 501(C)(3) of the Federal Internal Revenue Code.[3]
The State argues that “Act 129 does not specify what means an institution must employ to show that it has been granted 501(c)(3) tax exempt status. Thus, in order to apply this statutory provision the Board has interpreted it to require that an institution, at the least, provide a tax exempt status determination form which is obtainable from the IRS.” The State further argues, “The alternative to this requirement being that any institution claiming to be affiliated with a church, no matter what type of courses and degrees they offer, would automatically be outside of the reach of the Board. Clearly, this cannot be what was intended by the Legislature in enacting Act 129.”
26 U.S.C. § 501 provides in pertinent part:
(a) Exemption from taxation. — An organization described in subsection (e) or (d) or section 401(a) shall be exempt from taxation under this subtitle lfiunless such exemption is denied under section 502 or 503.
⅜: ⅜ * # ⅜ *
(c) List of exempt organizations. — The following organizations are referred to in subsection (a):
⅜ * * ⅜ # *
(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes.... no part of the net earnings of which inures to the benefit of any private shareholder or individual. ... (Emphasis added.)
26 U.S.C. § 508 provides in pertinent part:
(a) New organizations must notify Secretary that they are applying for recognition of Section 501(c)(3) status. — Except as provided in subsection (c), an organization organized after October 9, 1969, shall not be treated as an organization described in section 501(c)(3)—
26 U.S.C. § 508(c) provides in pertinent part:
*775 (c) Exceptions.—
(1) Mandatory exceptions. — Subsections (a) and (b) shall not apply to— (A) churches, their integrated auxiliaries, and conventions or associations of churches, ...
The State argues that:
[T]he Board was acting within its implied powers to implement and administer Act 129 when it required LaSalle University to substantiate its 501(C)(3) status. The Board’s interpretation of Act 129 as requiring such documentation is reasonable in light of the statute’s silence on this issue and, specifically, because of the facts in this ease.
The state further argues:
World Christian Church, Inc. is a Louisiana ‘non-profit corporation’ which according to its articles of incorporation is organized and it shall be operated exclusively as a church. (Record p. 33). Despite this declaration of purpose, World Christian Church, Inc., is doing business as LaSalle University, offering a panorama of academic degrees to residents of all fifty states through correspondence courses while operating out of Mandeville, Louisi- • ana_
According to LaSalle University’s student handbook, the institution’s course offerings include: Communications, Education, English, History, Management, Psychology, and Legal Studies through their Southland Law Center. (Exhibit P-5). LaSalle advertises nationally its law and professional career programs and other degrees with no mention of World Christian church or the ‘theocentric’ orientation of its programs. (Exhibits P-3 and P-4). In addition, LaSalle University’s projected sales for the year 1991, as reported by the institution to Dunn and Bradstreet, Inc., were three million dollars. It is this information that the Board took into ^consideration in determining that LaSalle University’s claim of tax exempt status would require further documentation for purposes of Act 129. Clearly, in light of LaSalle University’s extensive secular academic offerings and degrees and its significant sales, the Board acted reasonably in requiring LaSalle University to substantiate its tax exempt status despite LaSalle’s claim that it is a church and, therefore, not required to obtain tax exempt recognition from the IRS.
The State also argues:
The trial court’s decision is based upon an incorrect interpretation of Act 129’s provision which exempts 501(C)(3) tax exempt organizations. The trial court concluded that because Act 129 refers to tax exempt status under the IRC, the federal tax provisions are controlling for purposes of exemption from Act 129. Consequently, the lower court found that because the IRC does not require churches to obtain recognition of their 501(C)(3) status, the Board is prohibited from requiring them to do so.
This conclusion, however, is based upon an incorrect reading of Act 129. The intent and purpose behind Act 129 is to put into place a licensure scheme which would insure the viability of postsecondary, academic degrees granted by institutions operating in Louisiana. As stated before, this purpose would be difficult, if not impossible, to achieve if the Board were required to accept an institution’s unsubstantiated claim that it is 501(C)(3) tax exempt.
As stated in Kramer v. State Board Of Veterinary Medical Examiners, 55 So.2d 93, 95 (La.App. 1st Cir.1951), an administrative body is “without authority to enlarge the powers delegated to it by the Legislature.” In Kramer, this Court found the statute giving the State Board of Veterinary Examiners the power to examine into the qualifications of applicants for certificates to practice veterinary medicine or surgery did not empower it to set rules pertaining to qualifications for applicants before examination. In Pearce v. Kramer, 128 So.2d 304 (La.App. 3d Cir.1961), the Commissioner of Agriculture sought to enforce a regulation adopted with regard to milk pricing. In ruling the regulation invalid, the court stated that “an administrative officer may apply only the policy declared in the statute with respect to the matter as to which he purports to act, and he may not set different standards or change the policy.”
128 So.2d at 306.
*776 After thorough review of the law and the record, we find that we are compelled to affirm the trial court judgment. Louisiana Revised Statute 17:1808, as adopted by the legislature, clearly and unequivocally states, “The provisions of this Section shall not be I «applicable to any institution granted a tax exemption under the provisions of Section 501(C)(3) of the federal Internal Revenue Code.” La.R.S. 17:1808(J)(3). As noted above, IRC § 508(c) provides that “churches, their integrated auxiliaries, and conventions or associations of churches ...” are granted automatic IRC § 501(c)(3) status, without the necessity of paperwork provided to the IRS. The legislature chose to automatically exempt from the licensure requirements of La. R.S. 17:1808 institutions which are tax exempt under IRC § 501(c)(3). The legislature chose to defer to federal law in this procedural area, although it could have made more stringent requirements for exemption from La.R.S. 17:1808. Although we are sympathetic to the arguments of the State, we must apply the law as it is written. Should the legislature wish to revise La.R.S. 17:1808 to provide that tax exempt organizations under Internal Revenue Code § 501(c)(3) must provide paperwork to prove their tax-exempt status in order to be exempted from La.R.S. 17:1808, it may choose to do so. The current statute does not clearly and unambiguously require that. This case is decided solely on the interpretation of the statute, and we do not pass on the issue of preemption.
We find no error of law or fact; therefore, for the foregoing reasons, the trial court judgment is AFFIRMED. Costs are assessed against the State in the amount of $352.60.

. The full text of La.R.S. 17:1808 is attached as Appendix A.

. The J(3) exemption to La.R.S. 17:1808's licen-sure provisions for IRC § 501(c)(3) organizations was added to La.R.S. 17:1808 by Acts 1991, No. 129 § 1.

. The "c" is capitalized in the reference to Section 501(c)(3) in La.R.S. 17:1808, but the "c" is not capitalized in the Federal Internal Revenue Code.